# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MICHAELA GAGNE, | ) | |
| Plaintiff, | ) | |
|  | ) | |
|  | ) | |
| v. | ) | **CIVIL ACTION** |
|  | ) | **NO. 4:22-cv-40008-TSH** |
|  | ) | |
| STALLION EXPRESS, LLC, | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

### September 15, 2022

Hennessy, M.J.

By order of reference dated April 6, 2022, pursuant to 28 U.S.C. § 636(b)(1)(B) (Docket #25), this matter was referred to me for a report and recommendation on Defendant Stallion Express, LLC's ("Stallion") motion to dismiss and compel arbitration or in the alternative to stay proceedings pending arbitration (Docket #10).  Plaintiff Michaela Gagne opposed the motion (Docket #12) and Stallion filed a reply to the opposition (Docket #22) to which Gagne filed a sur-reply (Docket #23).  For the reasons that follow, I recommend that the motion to dismiss and compel arbitration be GRANTED.

I.    FACTUAL BACKGROUND[1]

Gagne began working as a courier for Stallion in April of 2018.  (Docket #1 at ¶ 7).  Although Gagne was classified as an "independent contractor," she claims that she should have been properly classified as a Stallion employee.  (Id. at ¶ 77).  This alleged misclassification is the basis for her various wage claims brought under the Fair Labor Standards Act as well as Massachusetts state law.  (Id. at ¶¶ 76-80).

Stallion is a logistics provider that furnishes a platform connecting nursing facilities with a variety of local pharmacies.  (Docket #12-1 at ¶ 3).  Through Stallion, nursing facilities place *ad hoc* orders with pharmacies for prescription drugs and medication.  (Id.).  The pharmacies prepare these orders by utilizing their bulk inventory.  (Id.).  Stallion arranges for couriers to deliver the prescription drugs from local pharmacies to local nursing facilities.  (Id.).

For the duration of her tenure with Stallion, Gagne was paid through a third-party administrator.  (Docket #12-1 at 2).  In December of 2020, Stallion informed Gagne that it was going to use a new third-party administrator, Openforce, to process payroll and perform related services and that Gagne needed to enroll with Openforce.  (Id.).  On January 1, 2021, Gagne enrolled and signed a Carrier TPA Services Agreement ("Services Agreement") with Openforce as well as an Arbitration Agreement attached as Schedule B to the Services Agreement ("Arbitration Agreement").  (Docket #11-2).

---

[1] In support of its motion to dismiss and compel arbitration, Stallion has submitted the Declaration of Samantha Southern, (Docket #11-1), and the Carrier TPA Services Agreement, (Docket #11-2).  Gagne has submitted her own affidavit, (Docket #12-1), that of her counsel, Adam J. Shafran, (Docket #23-1), a screenshot of the Stallion Express Vendor Portal (Docket #12-1), copies of legal documents available when logging into the Stallion Express Vendor Portal, (id.), and a copy of the "About Us" page on the Openforce website (Docket #11-2).  On a motion to compel arbitration, the court may properly consider these documents.  See Soto v. State Indus. Products, Inc., 642 F.3d 67, 72 n.2 (1st Cir. 2011) (arbitration agreements may be considered in connection with a motion to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 4, without treating the motion as one for summary judgment); cf. Ouadani v. Dynamex Operations E., LLC, No. 16-12036-PBS, 2017 WL 1948522, at *1 n.2 (D. Mass. May 10, 2017) ("The First Circuit has not stated what standard the movant should be held to at [a motion to compel arbitration], although some courts have applied a summary judgment standard.").

On February 22, 2022, Stallion filed the instant motion seeking to dismiss Gagne's collective and class action complaint in favor of arbitration arguing that Stallion is an intended third-party beneficiary of the Arbitration Agreement.  (Docket #10).

## II.   LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 et seq., provides that agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[2]  9 U.S.C. § 2.  The FAA embodies a "liberal federal policy favoring arbitration."  AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011) (internal citations and quotations omitted).  That policy requires "ambiguities as to the scope of the arbitration clause itself [to be] resolved in favor of arbitration."  Ouadani v. TF Final Mile LLC, 876 F.3d 31, 36 (1st Cir. 2017) (quoting Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Sandford Junior Univ., 489 U.S. 468, 476 (1989)) (alterations in original).

In spite of the strong federal policy favoring arbitration, the Supreme Court has made clear that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  AT&T Techs., Inc. v. Communs. Workers of Am., 475 U.S. 643, 648 (1986) (quoting United Steelworkers v. Warrior & Gulf Navig. Co., 363 U.S. 574, 582 (1960)); see Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 681 (2010) ("arbitration is a matter of consent, not coercion").  Although there are some exceptions, "courts should be extremely cautious about forcing arbitration in 'situations in which the identity of the parties who have agreed to arbitrate is unclear.'"  InterGen N.V. v. Grina, 344 F.3d 134, 142 (1st Cir. 2003) (quoting McCarthy v. Azure, 22 F.3d 351, 355 (1st Cir. 1994)).  A party seeking to compel arbitration "must show that a valid agreement to arbitrate exists, that the movant is entitled

---

[2] The parties agree that the FAA applies to the instant case.  (See Docket #11 at 10; Docket #23 at 6)

to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope." Id.

IV.    ANALYSIS

The parties agree that a valid arbitration agreement binding Gagne exists and that the claims asserted in her complaint are within the scope of that agreement.  However, the parties dispute whether Stallion, a nonsignatory, is entitled to invoke the Arbitration Agreement as an intended third-party beneficiary thereto.

"[T]he intent to provide a benefit to third parties in an arbitration agreement 'constitutes an exception to the general rule that a contract does not grant enforceable rights to nonsignatories.'"[3] Cortés-Ramos v. Martin-Morales, 894 F.3d 55, 58 (1st Cir. 2018) (quoting McCarthy, 22 F.3d at 362).  To compel arbitration, a third party must show with "special clarity" that the signatories intended their agreement to arbitrate to benefit a third party.  McCarthy, 22 F.3d at 362.  "In evaluating whether such 'special clarity' exists, a court should focus on the 'specific terms' of the agreement at issue, being mindful that it 'ought not to distort the clear intention of contracting parties or reach conclusions at odds with the unambiguous language of a contract.'" Hogan v. SPAR Grp., Inc., 914 F.3d 34, 39 (1st Cir. 2019) (quoting InterGen, 344 F.3d at 146).

Stallion asserts that it qualifies as a third-party beneficiary of the Arbitration Agreement because it is a "contractor" of both Gagne and Openforce.  (Docket #22 at 4-5).  Stallion also asserts that as a third-party beneficiary to the Services Agreement, it is entitled to invoke those

---

[3] The parties appear to agree that federal common law governs whether Gagne's claims against Stallion are subject to the Arbitration Agreement, (see Dockets #11 at 8-9; #12 at 5-7), notwithstanding the fact that the Services Agreement contains an Arizona choice-of-law provision, (Docket #11-2 at 14).  Although the First Circuit has noted that the Supreme Court has called into question whether courts should use federal common law, as opposed to specific state law, to determine whether nonsignatories are bound by arbitration clauses, see Grand Wireless, Inc. v. Verizon Wireless, Inc., 748 F.3d 1, 11-12 (1st Cir. 2014), the First Circuit has also applied federal common law since then, see Ouadani, 876 F.3d at 37.  Given that the issue is uncontested here, the Court will apply federal common law.

rights contained in the Services Agreement's schedules.  (Id. at 5-6).  The undersigned deals with these arguments in turn.

A.     Contractor Status

The Arbitration Agreement expressly provides third-party beneficiary rights to "[a]ll current and future employees, contractors, workers, successors and affiliated business of the parties (whether sole proprietorship, partnership, limited liability entity or corporation)[.]"  (Docket #11-2 at 21) (emphasis added).   The term "contractor" is not defined in either the Arbitration Agreement or the Services Agreement.

Black's Law Dictionary defines "contractor" as "1. A party to a contract. 2. More specif[ically], one who contracts to do work for or supply goods to another; esp[ecially], a person or company that agrees to do work or provide goods for another company <a roofing contractor>." Black's Law Dictionary (11th Ed. 2019).  Stallion argues that the more general definition applies, and therefore it is entitled to compel arbitration because of its independent contractor relationship with either Gagne or Openforce.  (Docket #22 at 4-5).  However, when read in conjunction with the other terms in the third-party beneficiary clause of the Arbitration Agreement, it is clear that the parties intended the more specific definition to apply.  The placement of the term "contractors" between "current and future employees" and "workers" clarifies that Gagne and Openforce intended to confer third-party beneficiary status only on entities or individuals who work for Openforce or Gagne.  See Davis v. Dawson, Inc., 15 F. Supp. 2d 64, 109 (D. Mass. 1998) (When interpreting contract terms, "Courts also examine the location of words within a sentence[.]").  As Stallion has not contracted to work for either Openforce or Gagne, it is not entitled to enforce the Arbitration Agreement as a result of any independent contractor relationship that may exist between itself and either Gagne or Openforce.

B.      Third-Party Beneficiary Status under the Services Agreement

The Services Agreement between Gagne and Openforce expressly provides that "Logistics Providers" are intended third-party beneficiaries.  (Docket #11-2 at 3).  There is no dispute that Stallion is a Logistics Provider under the Services Agreement and hence an intended third-party beneficiary thereto.  (See Dockets #11 at 6; Docket #12 at 6).  Stallion asserts that such status entitles it to compel arbitration of Gagne's claims because the Arbitration Agreement is incorporated by reference into the Services Agreement.  (Docket #22 at 5).  Gagne, on the other hand, argues that the undersigned's finding that Stallion does not qualify as a "contractor" with respect to the Arbitration Agreement's third-party beneficiary clause should end the court's analysis.  (Docket #23 at 6).

Under federal law, an agreement incorporating an arbitration provision by reference binds a party to arbitrate its disputes as if the clause was written out in the agreement.  See Maxum Foundations, Inc. v. Salus Corp., 779 F.2d 974, 978 (4th Cir. 1985) ("it is well-settled that, under the Federal Arbitration Act, an agreement to arbitrate may be validly incorporated into a subcontract by reference to an arbitration provision in a general contract").  The integration clause in paragraph 21 of the Services Agreement specifically incorporates the Arbitration Agreement by reference therein, stating, in pertinent part, "This Agreement (inclusive of the recitals and definitions above, **Schedules A** and **B** hereto, and the **"Carrier Summary / 24 Points of Understanding"** below) shall constitute the entire Agreement between the parties with respect to the subject matter hereof[.]"  (Docket #11-2 at 13 (emphasis in original)).  This clause clarifies that the parties to the Services Agreement intended for the recitals, including the third-party beneficiary clause of the Services Agreement, to apply to the entire integrated agreement.

Gagne asserts that, at best, this creates an ambiguity, arguing that it is plausible that the parties to the contracts intended the specific language used in the third-party beneficiary clause of the Arbitration Agreement to solely govern the determination of the identity of the third-party beneficiaries to the Arbitration Agreement.  (Docket #23 at 6-7); see Lawson v. FDIC, 3 F.3d 11, 17 (1st Cir. 1993) ("it is a familiar precept of contract interpretation that the specific controls the general").  However, the undersigned finds no such ambiguity.

"When several writings evidence a single contract . . .  they will be read together."  Weiss v. DHL Express, Inc., 718 F.3d 39, 45 (1st Cir. 2013) (quoting FDIC v. Singh, 977 F.2d 18, 21 (1st Cir. 1992).  The court must read the document "to give effect to all its provisions and to render them consistent with each other."  Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 63 (1995).  An ambiguity only arises if the language of the document "is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one."  Weiss, 718 F.3d at 45 (quotation omitted).

Reading the Services Agreement and the Arbitration Agreement together, it is evident that the parties thereto intended that Logistics Providers such as Stallion be entitled to enforce the Arbitration Agreement as third-party beneficiaries.  This finding is supported by paragraph 25 of the Services Agreement, entitled "**BINDING ARBITRATION AGREEMENT; CLASS ACTION WAIVER**." (Docket #11-2 at 14 (emphasis in original)).  Pursuant to that clause, Gagne and Openforce "agree[d] to resolve certain disputes between them through binding arbitration as set forth in the **Arbitration Agreement** attached as **Schedule B** to [the Services] Agreement." (Id. (emphasis in original)).  As a third-party beneficiary of the Services Agreement, Stallion is entitled to enforce this clause.  This is reinforced by the language at the end of the Services Agreement in capital boldface stating: "**THIS CONTRACT CONTAINS A BINDING**

**ARBITRATION PROVISION AND CLASS-ACTION WAIVER WHICH AFFECTS YOUR LEGAL RIGHTS AND MAY BE ENFORCED BY THE PARTIES."** (Docket #11-2 at 15). Rather than precluding Logistics Providers from compelling arbitration of covered claims, the arbitration clause in the Arbitration Agreement expands the scope of individuals and entities who are subject to arbitration, namely those who work for Gagne, Openforce, or, due to their status as express third-party beneficiaries to the Services Agreement, Logistics Providers as well as their successors and affiliated businesses. Stallion has demonstrated with "special clarity" that the signatories to the Services and Arbitration Agreements intended their agreement to arbitrate to benefit Logistics Providers such as Stallion. See McCarthy, 22 F.3d at 362.

V.      CONCLUSION

        For the foregoing reasons, I RECOMMEND that Stallion's motion to dismiss and compel arbitration (Docket #10) be GRANTED. [4]

                                        /s/ David H. Hennessy
                                        David H. Hennessy
                                        United States Magistrate Judge

---

[4] The parties are hereby advised that, under the provisions of Fed. R. Civ. P. 72, any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objections are made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Emiliano Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-05 (1st Cir. 1980); see also Thomas v. Arn, 474 U.S. 140 (1985).